# Malone, Admr. *v.* Arends.

## *Statutory Action of Ejectment.*

1. *Ejectment; title by adverse possession; proceedings in former suit of ejectment, inadmissible to show estoppel.*—In a statutory action of ejectment where the defendant pleads the general issue and the statute of limitations of ten years, and suggests three years adverse possession and permanent improvements, the plaintiff can not, for the purpose of estopping the defendant from claiming to have been in adverse possession at the time of a former suit in ejectment to recover the same property, introduce in evidence the record and pleadings in the former action of ejectment brought by the present defendant against the present plaintiff.

[Malone, Admr. v. Arends.]

2. *Deed; evidence only of conveyance of grantor's title.*—A deed conveying certain described land, is evidence only of the conveyance by the grantor of such title as he may have had in the land, and is not evidence of the fact that he had any title to the land.

3. *Same; charges as to removal of fences inclosing land sued for.*— In an action of ejectment, where the plaintiff rests his case solely upon the contention that the defendant, an adjoining proprietor, had moved her fence upon plaintiff's lot, thereby inclosing and taking possession of the parts thereof which are sued for, and the defense is rested upon the denial of this fact and the contention that the fences were where they had stood for twenty years, during all of which time the defendant had had adverse possession of all of the land inclosed by them, the removal of the fences *vel non* at the time designated is the main question at issue; and charges which instruct the jury that if they find from the evidence that no change was made in the fences at the time designated, and that they had not been changed as to location since they were first built, they must find for the defendant, are properly given.

4. *Same; adverse possession.*—In such case, a charge which instructs the jury that if they find from the evidence that the defendant has been in the actual, notorious possession of the land sued for, claiming them as her own, for a period of ten years or more next before the bringing of this suit, then you must find for the defendant, no matter in whom may be the paper title, asserts a correct statement of the law of adverse possession as applied to the evidence in the case, and is properly given.

5. *Charges to the jury.*—When there is no evidence in the case tending to support different postulates of charges requested, such charges are properly refused.

APPEAL from the Circuit Court of Escambia.

Tried before the HON. N. D. DENSON.

This was a statutory action of ejectment brought by the appellant, as administrator of the estate of Elizabeth Snowden, deceased, against the appellee, Mrs. Margaret Arends, to recover the possession of certain specifically described strips of land off of three sides of lot number three in block fourteen in the town of Brewton.

The defendant pleaded the general issue, the statute of limitations of ten years, and suggested three years adverse possession and permanent improvements.

The plaintiff introduced a deed from one E. T. Brewton and wife to his intestate, bearing date of execution January 30, 1877, describing the portion of lot number three of block fourteen, in the town of Brewton, upon which were the strips of land sued for. This deed is not set out in the bill of exceptions. The plaintiff testified

[Malone, Admr. v. Arends.]

that he built a house upon this lot and inclosed all the lot with a fence for his intestate, at the time of the execution of this deed, and that his intestate had remained in actual possession of said lot, including the strips involved in this controversy, until the years 1889 and 1890, in which years the defendant who owned adjoining lots, moved the fence on the three sides of the lot of his intestate, so as to include in the premises of the defendant the strips of land here sued for; and that since moving this fence in the years 1889 and 1890 the defendant had been in the actual possession of the property involved in this suit. Two of the witnesses for the plaintiff testified to the same facts. One Gray, a carpenter, testified that he moved the fence on two sides of the lot in 1890, by the direction of the defendant. The plaintiff and his wife testified that the defendant rented the lot owned by plaintiff's intestate from her in the winter of 1884 and 1885, holding the same under such rental for about two years, and that subsequently, in 1888 or in 1889, the defendant again rented the lot from plaintiff's intestate and kept it for a few months.

The defendant testified that she owned and occupied the land on three sides of the lot known as the Snowden lot; that more than twenty years ago, and before Mrs. Snowden, plaintiff's intestate, ever improved or moved upon said lot, defendant built the fences on two sides of said lot; that the fence on the third side of said lot was placed where it now is by the party from whom defendant purchased the lot before she purchased said lot, but she did not testify when she purchased said lot; that none of the fences around the Snowden lot had ever been moved or changed by her or any one for her; that the two fences alleged to have been moved by defendant in the year 1890, have never been moved since they were built by defendant more than twenty years ago, and that the third fence alleged to have been moved by defendant now stands just where it was placed by the party from whom she bought the lot; that she has always held and claimed as her own the lands here sued for, ever since she went into possession of the same by fencing them as above set forth, actually occupying and notoriously claiming the same against all the world; that the statement made by plaintiff and his witnesses in reference to the fences having been moved were entirely wrong; that

no such moving was ever done ; that she had never rented the lands in controversy from any one ; that some time about 1885 or 1886 a negro woman, who was then cooking for defendant, rented the house known as the Snowden house and the lot which was inclosed in the fences around said house, but this embraced no portion of the lands in controversy ; that defendant paid the rent for the said property out of the wages of her said cook, at her request, but had no other connection with the renting of said lot ; that about 1888 or 1889 defendant did rent from plaintiff's intestate the yard inclosed by the fences alleged to have been moved and used the same for a fowl yard for a month or two ; that she kept it no longer than two months ; that the lands in controversy were not embraced in this contract of rental, for they then were and had been for many years in defendant's inclosure and used and claimed by her ; that she only rented the property then embraced in what is known as the Snowden yard, and this did not include or embrace any portion of the lands in controversy. There were many witnesses introduced in behalf of the defendant who corroborated her testimony as to the location and removal of the fences.

The bill of exceptions recites that "Plaintiff then offered to show, for the purpose of estopping defendant from claiming to have been in the adverse possession of the land in controversy at the time of a certain former suit involving this same property, that in September, 1891, defendant brought an action of ejectment against plaintiff for the whole of the Snowden lot embracing the strips here sued for and failed in said suit ; and offered to introduce the record of the proceeding in such case. The court refused to admit the same, and plaintiff excepted. For the purpose of showing such estoppel plaintiff then offered to introduce the complaint in said cause, which alleged the unlawful entry upon and holding of the entire one hundred feet square lot, embracing the strips sued for in this action, at the time of the institution of that suit, and plaintiff's plea of not guilty filed in that case. The court refused to admit this evidence, and the plaintiff excepted."

After stating that it contained all the evidence in the case, the bill of exceptions then recites : "The court charged the jury in his general charge that the Snowden

deed did not convey the legal title ; that it gave plaintiff's intestate only color of title, and that the jury could look to the deed for the purpose of ascertaining the extent of plaintiff's possession and of his intestate's possession.''

The plaintiff requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked : (1.) ''The court charges the jury that the mere possession of land will not constitute adverse possession ; as the law presumes, in the absence of proof to the contrary, that every one in the possession of land holds under the true or real owner. And·if a partition fence be extended by any one of two adjacent owners, so as to embrace within his inclosure a portion of his neighbor's land, through mere inadvertence, or ignorance of the location of the real line, or for purposes of convenience, and with no intention to claim the part of his neighbor's land so inclosed, but intending merely to claim adversely only to the real or true boundary line, wheresoever it might be, such possession is not adverse to owner.'' (2.) ''If the jury believe that the partition fences between the lot, fractions of which are sued for in this case, and the adjoining lots, was by mistake placed inside of the true line of lot 3, and the adjacent proprietor, or owner of the adjoining lot occupied a portion of said lot 3 sued for in this action, without setting up any claim or title further than his or her own true boundary line, then such occupancy would not be adverse to the true owner. And although the jury may believe from the evidence that Mrs. Arends and her vendor may have inclosed a strip off the southeast side of lot 3, for more than ten years prior to commencement of this suit, yet if they further find from the evidence that such occupancy was in ignorance of the location of the true dividing line, and with no intention to claim title to any part of lot 3, and that such intention to claim title and adversely hold said inclosed strip of lot 3 first entered the mind of ·defendant within less than ten years before the commencement of this suit, then such holding would not be sufficient of itself to give defendant title to such strip by adverse possession.'' (3.) '' The court charges the jury that when there exists a relation of privity, such as landlord and tenant, by virtue of which possession is

[Malone, Admr. v. Arends.]

originally taken, it can not be dissolved and the possession converted into hostile or adverse to the principal or landlord only by clear, positive and continuous disclaimer and a disavowal of his title, and the unequivocal assertion of an adverse right, and the burden is on the defendant in this case to prove to your satisfaction, her assertion of such adverse right for ten years, prior to the commencement of this suit." (4.) "The court charges the jury tnat if they find from the evidence that Mrs. Elizabeth Snowden went into possession of the lot sued for in this case under a claim of ownership, built a house on it, inclosed it under fence and occupied it herself, or by tenants, to the exclusion of other claimants, visibly, notoriously, and continuously for a period of ten years, such ten years possession gave her a good title, whether she had a good deed or any deed at all to it; and if, after such possession had so ripened into title, the defendant took possession of said lot or any part of it, she can be ousted by an action of ejectment by the plaintiff at any time within ten years from the time of taking such possession, no matter what sort of deed defendant had originally."

At the request of the defendant, the court gave to the jury the following written charges, to the giving of each of which the plaintiff separately excepted: (1.) "The court charges the jury that there is no title shown in plaintiff's intestate, save such as she may have gained by possession, and if you find from the evidence that Mrs. Snowden was never in possession of the lands sued for, then the plaintiff can not recover and you should find for the defendant." (2.) "The court charges the jury that if you find from the evidence that Mrs. Arends rented only that portion of the Snowden lot which was within the Snowden fences, and that she did not rent that portion of said lot which is now in controversy, then the said renting has nothing to do with this case." (3.) "The court charges the jury that there is no evidence in this case of any change of fences except during the year 1889 and 1890, and if you find from the evidence that no change was made at this time, then you must find for the defendant." (4.) "The court charges the jury that if they find from the evidence in this case that the defendant, Mrs. Arends, has been in actual notorious possession of the lands sued for, claiming them

[Malone, Admr. v. Arends.]

as her own, for a period of ten years or more next before the bringing of this suit, then you must find for the defendant, no matter in whom may be the paper title."

(5.) "The court charges the jury that under the evidence in this case they can not find for the plaintiff, unless they believe from the evidence that the fences on the three sides of the lot in controversy or some of said fences have been changed as to location since said fences were first built."

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

DAVIDSON & SMITH, for appellant.—1. The court erred in refusing to admit in evidence the record of the former ejectment suit for the same lot, by the appellee against the appellant. There was error in refusing to permit the plaintiff to introduce the complaint of appellee, and appellant's plea of not guilty in that case.—7 Amer. & Eng. Encyc. of Law, p. 2 "b," notes 3, 9 ; 1 Greenl. on Ev., §§ 27, 207, 208 ; *Hill v. Huckabee*, 70 Ala. 183.

2. Charges 1 and 2 asked in writing by plaintiff are correct propositions of law, applicable to the evidence and reasonable inference therefrom.—1 Amer. & Eng. Encyc. of Law, (1st ed.), pp. 248–9 ; (2d ed.), p. 791 ; *Brown v. Cockerell*, 33 Ala. 38 ; *Alexander v. Wheeler*, 69 Ala. 332 ; *Dothard v. Denson*, 72 Ala. 541 ; *Alexander v. Wheeler*, 78 Ala. 167.

3. The refusal of the third charge asked in writing by plaintiff was error.—*Lucy v. Tenn. & Coosa R. R. Co.*, 92 Ala. 246 ; *Baucum v. George*, 65 Ala. 260 ; *Wells v. Sheerer*, 78 Ala. 143 ; *Lucas v. Daniels*, 34 Ala. 188.

4. Charge number 4, asked in writing by plaintiff, states correctly the law applicable to the evidence and should have been given.—1 Amer. & Eng. Encyc. of Law, (2d ed.), p. 883 ; *Murray v. Hoyle*, 92 Ala. 559.

M. A. RABB, *contra.*—1. The ruling of the trial court in refusing to introduce the record and proceedings in the former suit of ejectment was free from error.—*Camp v. Forest*, 13 Ala. 114 ; *Jones v. DeGraffenried*, 60 Ala. 145.

2. Each of the charges asked by the defendant contained incorrect propositions of law and were properly

refused.—*Allen v. Hamilton*, 109 Ala. 634 ; *McCutchen v. Loggins*, Ib. 457 ; *L. & N. R. R. Co. v. Malone*, Ib. 509 ; *Ala. Nat. Bank v. Halsey*, Ib. 196 ; *Cook v. Thornton*, Ib. 523 ; *Hundley v. Chadwick*, Ib. 575 ; *Conrad v. Gray*, Ib. 130 ; *Duncan v. Freeman*, Ib. 185.

McCLELLAN, J.—Neither the judgment nor the pleadings in the first action of ejectment between given parties can be *conclusive* of anything. The question being whether the defendant was in possession of the land in controversy in September, 1891, as she now claims to have been—and as the uncontroverted evidence both for plaintiff and the defendant shows that she was— it may have been competent to introduce the record and, especially, the pleadings in the former suit *as evidence of an admission* by the defendant that she was then not so in possession though we do not so decide ; but such evidence could not have been competent for the sole and avowed purpose of *estopping* her to now say she was then in adverse possession. But if this were otherwise, no possible injury could have resulted to plaintiff from the exclusion, since the issue of adverse possession upon which alone the trial was had did not turn upon the inquiry as to which party was in adverse possession at that particular time. If defendant's evidence was true, she had title by adverse possession prior to 1891, and the fact of her being out of possession then could not affect her rights in the suit. And, on the other hand, if the facts appear truly by the evidence for plaintiff, his adverse possession had ripened into title prior to that time, and neither his title nor his right of recovery in this action depended at all upon whether he or the defendant was then in adverse possession. Indeed he bases his right of recovery on the fact that the defendant wrongfully took possession in 1889 or 1890, and has since then continued therein.

The Brewton deed to plaintiff's intestate is not set out, either literally or substantially, in the bill of exceptions, and we, of course, cannot say that the trial court erred in instructing the jury that it did not convey title but only color of title to the grantee therein. Moreover, whatever the Brewton deed may have been, it could only evidence a conveyance by him of any title he may have had in the land, and not in any degree that he had any

[Malone, Admr. v. Arends.]

title. It does not appear that the defendant claimed under Brewton. For aught that is shown in the case the title may yet be in the United States.

The case of plaintiff was rested solely upon the contention that the defendant, an adjoining proprietor, had moved her fences over on plaintiff's lot, thereby inclosing and taking possession of the parts thereof which are sued for, in 1889 and 1890 ; and the defense was rested on the denial of this, and the contention that the fences at the time of suit brought stood precisely where they had stood for twenty years, during all which time the defendant had had adverse possession of all the land inclosed by them. Upon this issue of the removal *vel non* by defendant of the fences in 1889 and 1890 all the evidence was adduced, and upon it the case turned. If the fences were not then moved by defendant she had had adverse possession for more than ten years, and was entitled to recover. If they were then moved by her, plaintiff was entitled to recover. Removal *vel non* at that time was, therefore, the practical test of the rights of the parties ; and there was no error in the court's so instructing the jury, at the request of the defendant, in charges 3 and 5.

Charge 4 given for defendant is patently a correct statement of the law of adverse possession as applied to the evidence in the case.

It will suffice to say of charges 1 and 2 refused to the plaintiff that there is no evidence in the case tending to support some of their postulates ; as, for instance, that the defendant inadvertently and ignorantly put her fences beyond her own line intending to claim only to the true boundary.

So of charge 3 requested by the plaintiff : no evidence was offered tending to show that defendant originally took possession of the land sued for by virtue of any relation of privity with the plainiff.

Defendant did not pretend to have any deed to the land. The reference in charge 4 to any deed she may have had when she took possession may go as well to a deed from the United States as to any other. If she then received a patent from the government, clearly the possession hypothesized in the charge would not entitle plaintiff to recover. The charge was properly refused.

We find no error in the record, and the judgment below must be affirmed.

Affirmed.